## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## EASTERN DIVISION

**STANLEY LEE BRADLEY**                                    **PETITONER**

**V.**                          **CIVIL ACTION NO.2:18CV196 TBM-LGI**

**FRANK SHAW**                                             **DEFENDANT**

### REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Stanley Lee Bradley seeks federal habeas relief under 28 U.S.C. § 2254. After a review of the entire record and all the applicable law, the undersigned recommends that his petition be dismissed with prejudice.

#### Factual and Procedural Background

In 2015, a jury found Bradley guilty of aggravated assault of his girlfriend's brother. He was sentenced to twenty years in the custody of the Mississippi Department of Corrections (MDOC). The relevant facts are accurately described in the state court's opinion and repeated verbatim here.

As of mid–February 2014, Bradley and Cassandra Baker had been dating for seven years. Cassandra's brother, David Baker, had been living with them for approximately one month. On February 15, 2014, a number of people visited their house to celebrate Cassandra's birthday. After everyone else left at approximately 9 p.m., Cassandra and David rested on separate couches in the living room. Bradley was not ready to end the evening. Although he had been drinking, Bradley left to drive around and visit some friends. Bradley told Cassandra that he would "be right back."

Bradley "ended up at [Cassandra's] sister's house," where he continued to drink until he fell asleep on the couch. When he woke up "after two o' clock," he had a number of missed calls from Cassandra. Cassandra called him again while he was driving home. Bradley answered and explained that he was on his way home from her sister's house. Cassandra hung up. When she called again, he did not answer because he was nearly home. After parking and listening to music for "maybe three to five minutes," Bradley went inside.

It is undisputed that Bradley and David got into a fight. It is also undisputed that Bradley stabbed David multiple times with a pocketknife. Other necessary details will be discussed below. David went to the hospital, where he was treated for one stab wound to his lower side and four stab wounds to his upper back. Bradley was arrested and subsequently charged with aggravated assault. At trial, the prosecution called David, Cassandra, and the police officer who responded to Bradley's 911 call from a neighbor's house.[1] Bradley chose to testify after the prosecution rested its case-in-chief. Ultimately, the jury found Bradley guilty, and the circuit judge sentenced him to twenty years in the custody of the Mississippi Department of Corrections.

Aggrieved, Bradley appealed and raised two issues: (1) whether the prosecutor committed reversible error in making a "send the message" argument; and, (2) whether

---

[1] Bradley has maintained that he called 911 from a neighbor's house immediately after the incident. In pre-trial proceedings, he requested that the State produce his 911 recording and that his neighbors be allowed to testify to this effect at trial. However, the prosecutor advised that the only 911 recording that could be located was of the 911 call placed by the victim, David Baker. The undersigned also notes that the responding officer indicates in his report that Cassandra Baker placed the 911 call.

the trial court erred in denying the motion for new trial as the verdict was against the overwhelming weight of the evidence. The Mississippi Court of Appeals affirmed the conviction and sentence on April 25, 2017.  Subsequent petitions for rehearing and writ of certiorari were thereafter denied.

Bradley then filed a *pro se* application for state habeas relief asserting that his due process rights were violated and that counsel was ineffective for failing to address the differences in witness testimonies in closing argument; failing to object to the trial court's refusal to admit relevant evidence to support his self-defense theory; failing to perform an adequate pretrial investigation; and, failing to object to improper statements made by the prosecution in closing argument. He also asserted that trial counsel's "cumulative errors deprived him of his constitutional right to effective assistance of counsel, a fundamental fair trial, and due process of law."

 The Mississippi Supreme Court found that the ineffective assistance of counsel claims failed to meet both prongs of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), explaining as follows:

> After due consideration, we find the following. First, Bradley fails to present a substantial showing that trial counsel was ineffective for not (a) addressing the differences between the prosecution's witnesses' trial testimony and their prior statements; (b) objecting when the trial court refused to admit certain evidence supporting his self-defense theory; or (c) conducting an adequate pretrial investigation. Miss. Code Ann. § 99-39-27 (5). Second, his claim that trial counsel was ineffective for not objecting to the prosecutor's improper remarks in closing arguments is barred. *Foster v. State*, 687 So. 2d 1124, 1129 (Miss. 1996) ("[I]issues which were . . . presented through direct appeal . . . are procedurally barred and cannot be relitigated under the guise of poor representation by counsel.").  Third, his defective-indictment claim is waived, and he fails to show cause and actual prejudice to warrant waiving the bar. Miss. Code Ann. § 99-39-21 (1).

3

Finally, he fails to present a substantial showing that trial counsel was ineffective due to cumulative errors. Miss. Code Ann. § 99-39-27 (5). Under his cumulative-error claim, he also challenges the sufficiency of the evidence. That particular argument is waived. Miss. Code Ann. § 99-39-21 (1).

Bradley now brings the instant petition for federal habeas relief and raises the same grounds rejected on state post-conviction review (as stated by Petitioner):

| | |
|---|---|
| Ground One: | Ineffective trial counsel by failing to address the differences in state's witnesses trial testimony and prior statements. |
| Ground Two: | Ineffective trial counsel for failing to object to trial court refusal of relevant evidence supporting self-defense theory. |
| Ground Three: | Ineffective trial counsel for failing to object to prosecutor's improper remarks during closing argument of "send a message." |
| Ground Four: | Ineffective trial counsel for failure to conduct adequate pretrial investigation. |

## Discussion

This Court's review of Petitioner's claims for federal habeas relief is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996. Under the Act, this Court cannot grant a petitioner federal habeas corpus relief for any claim that was adjudicated on the merits in a state court proceeding, unless the adjudication:

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This Court reviews questions of law as well as mixed questions of

law and fact under 28 U.S.C. § 2254(d)(1), while questions of fact are reviewed under 28

U.S.C. § 2254(d)(2).

Under the first prong, the clauses "contrary to" and "unreasonable application of"

are independent bases for granting federal habeas relief.  *Williams v. Taylor*, 529 U.S.

362, 405, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).  A state court's decision is "contrary

to" federal law if it contradicts Supreme Court precedent or reaches a different result on

materially indistinguishable facts.  *Id.*  Under the "unreasonable application" clause, a

federal habeas court may grant relief if the state court "correctly identifies the governing

legal principle" but then "unreasonably applies it to the facts of the particular case."  *Bell

v. Cone*, 535 U.S. 685, 694, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002).  The state court's

decision must be objectively unreasonable, not merely erroneous or incorrect.  *Wood v.

Allen*, 558 U.S. 290, 301, 130 S. Ct. 841, 175 L. Ed. 2d 738 (2010).

AEDPA's second prong requires that federal courts defer to a state court's factual

determinations unless they are based on an "unreasonable determination of the facts in

light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d);

*Morales v. Thaler*, 714 F.3d 295, 301 (5th Cir. 2013).  Deference is critical because

federal courts have no authority to grant habeas corpus relief simply because "we

conclude, in our independent judgment, that a state supreme court's application of

[federal] law is erroneous or incorrect."  *Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir.

2002); *Jasper v. Thaler*, 466 F. App'x 429, 435 (5th Cir. 2012).  Thus, we presume the

state court's determination of a factual issue is correct, unless a petitioner rebuts the presumption with clear and convincing evidence.  *See* 28 U.S.C. § 2254 (e)(1).

## Procedurally Defaulted Claim

## Ground Three

Before turning to the merits of Bradley's exhausted claims, the Court addresses the procedurally defaulted claim in ground three.  Bradley asserts that counsel was ineffective for failing to object to what he believes were improper remarks made by the prosecution in closing argument for the jury to "send a message."  The underlying claim was deemed procedurally barred on direct appeal because no contemporaneous objection was made to the remarks at trial.  Notwithstanding the procedural bar, the Mississippi Court of Appeals reviewed the issue for plain error and found the prosecution's remarks were not improper, but merely reiterated the jury's duty as outlined in the jury instructions. The court explained: "The prosecutor did not urge jurors to use their verdict to send a message to anyone. Instead, the prosecutor argued that the evidence showed Bradley was guilty, his behavior was not merely a family dispute but unacceptable and unreasonable, and the jury should hold him accountable." *Bradley v. State*, 223 So. 3d 794, 799 (Miss. Ct. App. 2017)

Aggrieved, Bradley elected to raise the corollary ineffective assistance of counsel claim on state post-conviction review—that trial counsel was ineffective for failing to object to the remarks at trial.  Because Mississippi courts have long held that procedurally barred claims cannot be relitigated on post-conviction review under the guise of an ineffective assistance of counsel claim, the Mississippi Supreme Court

6

rejected the ineffective assistance of counsel claim as procedurally barred pursuant to *Foster*, 687 So. 2d at 1129. Bradley now seeks to raise the ineffective assistance of counsel claim here.

However, federal courts have no jurisdiction to review a habeas claim "if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both ***independent*** of the merits of the federal claim and an ***adequate*** basis for the court's decision." *Roberts v. Thaler*, 681 F.3d 597, 604 (5th Cir. 2012) (emphasis in original). Under the procedural default doctrine, "[t]he twin requirements of independence and adequacy demand that the state court's dismissal must 'clearly and expressly' indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims." *Id.*

The procedural bar clearly and expressly relied upon by the Mississippi Supreme Court in disposing of ground three here has long been recognized as an independent and adequate state ground consistently and regularly applied to procedurally defaulted claims. *See Foster,* 687 So. 2d at 1129*; Williams v. State*, 722 So.2d 447, 449 (Miss. 1998); *Wilcher v. State*,863 So.2d 719, 733 (Miss. 2003); *King v. State*, 23 So.3d 1067, 1070 (Miss. 2009); *Lattimore v. State*, 37 So.3d 678, 683 (Miss. 2010). Bradley can save his procedurally defaulted claim if he can demonstrate both cause for the default and actual prejudice resulting from it, or if he can show that a "fundamental miscarriage of justice" will occur if his claim is not considered. *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991), *holding modified by Martinez v. Ryan*, 566 U.S. 1,

132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012).  To show cause, a petitioner must prove that an external impediment (one that could not be attributed to him) existed to prevent him from raising the claims in state court. *Coleman*, 501 U.S. at 753.  *See United States v. Flores*, 981 F.2d 231 (5th Cir. 1993).  The failure to raise an ineffectiveness of trial counsel claim on appeal may serve as "cause" to excuse procedural default, but only if it has been raised and exhausted as an independent claim in state court.  *Hatten v. Quarterman*, 570 F.3d 595, 605 (5th Cir. 2009). "In other words, the claim of ineffective assistance of counsel on direct appeal is an independent constitutional violation, which must itself be exhausted using state collateral review procedures." *Id.* (citing *Edwards v. Carpenter*, 529 U.S. 446, 451–53, 120 S. Ct. 1587, 1591–92, 146 L. Ed. 2d 518 (2000)). *See also Luna v. Davis*, 793 F. App'x 229, 233 (5th Cir. 2019); *Hobgood v. Epps*, No. 3:08CV24 HTW-LRA, 2011 WL 1297063, at *10 (S.D. Miss. Mar. 31, 2011).

Here, Bradley did not exhaust an independent claim that his appellate counsel was ineffective for failing to raise ground three on direct appeal; thus, attorney error cannot serve as cause to overcome his procedural default.  *Hatten*, 570 F.3d at 605.  Absent a showing of cause to overcome his procedurally defaulted claim, this court need not consider whether Bradley was prejudiced. *Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir. 1992).

Further, Bradley has not shown that, as a factual matter, he is actually innocent of the crime and would suffer a fundamental miscarriage of justice if the defaulted claim was not considered.  The "fundamental miscarriage of justice" exception is triggered only "in an extraordinary case, where a constitutional violation has probably resulted in the

8

conviction of one who is actually innocent." *Murray v. Carrier,* 477 U.S. 478, 496 (1986). It requires that the petitioner support such an allegation with new, reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995). Bradley has presented no new evidence here. Accordingly, this claim is foreclosed from federal review.

### Claims Reviewed on the Merits in State Court

Bradley's remaining ineffective assistance of counsel claims were rejected on the merits on state post-conviction review. To warrant habeas relief, therefore, Bradley must demonstrate that the Mississippi Supreme Court's rejection of his ineffective assistance of counsel claims was an unreasonable application of *Strickland*. He must show that (1) "counsel's representation 'fell below an objective standard of reasonableness,'" and (2) "but for his counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different." *Blanton v. Quarterman*, 543 F.3d 230, 235 (5th Cir. 2008) (quoting *Strickland*, 466 U.S. at 688, 694). It is not enough to establish a deficiency and resulting prejudice, however. *United States v. Lewis*, 786 F.2d 1278, 1281 (5th Cir. 1986). Under the limited scope of AEDPA review, even if this Court found the Mississippi Supreme Court's application of *Strickland* was incorrect, we could not recommend granting habeas relief unless we found that court's application of *Strickland* to be objectively unreasonable or an actual misapplication of the law. The United States Supreme Court has explained that, under the AEDPA, federal habeas corpus review of an ineffective assistance of counsel claim is in fact doubly deferential:

The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington v. Richter*, 562 U.S. 86, 101, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011) (citation omitted). "[S]urmounting *Strickland's* high bar is never an easy task and [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Vasquez v. Thaler*, 505 F. App'x 319, 326 (5th Cir. 2013) (quoting *Premo v. Moore*, 562 U.S. 115, 122, 131 S. Ct. 733, 178 L. Ed. 2d 649 (2011) (internal quotation marks and citations omitted)).

As a threshold matter, the record reflects that Bradley vacillated between self-representation and representation by counsel prior to trial. The trial court cautioned Bradley, however, that the likelihood of an unfavorable outcome increases when a defendant represents himself and explained that his court-appointed counsel was an experienced trial lawyer. Bradley ultimately decided that he did not want to represent himself but wanted to fully participate in his representation at trial. *Metcalf v. State*, 629 So. 2d 558, 565 (Miss. 1993) ("The trial court, in its discretion, could have required Metcalf to choose between the right to counsel and the right to pro se representation, but in striving to balance both interests, it granted a "hybrid representation."). Accordingly, he was allowed to proceed with a hybrid representation— a "form of representation[ ] [in

which] defendant and counsel act, in effect, as co-counsel, with each speaking for the defense during different phases of the trial." *Batchelor v. Cain*, 682 F.3d 400, 444 (5th Cir. 2012) n. 5 (5th Cir. 2012) (quoting *United States v. Davis*, 269 F.3d 514, 519–20 (5th Cir. 2001)). Bradley gave his own opening statement and cross-examined the victim, while counsel conducted voir dire, the cross-examinations of Cassandra and the responding officer, jury instructions, and closing argument.

## Ground One

In ground one, Bradley asserts that trial counsel was ineffective for failing to address alleged discrepancies between David's and Cassandra's prior statements and their testimonies at trial. The record does not reflect that David or Cassandra gave written statements to police, but the responding officer, Officer Jarrod Smith of the Hattiesburg Police Department, noted the following in his report:

> I made contact with the reporting person and witness, Cassandra Baker. Cassandra stated that her boyfriend, Bradley, came into-her-house intoxicated and started yelling at her. Cassandra stated that her brother, Baker, was lying on the couch trying to sleep when Bradley came into the house causing a disturbance. Cassandra stated that Baker told Bradley that he needed to calm down and quit yelling at his sister. Cassandra stated that Bradley then began to threaten Baker and then escalated the verbal altercation to a physical fight. Cassandra stated that Bradley pushed Baker and herself on the couch and then proceeded to stab Baker with a pocket knife. Cassandra stated that Bradley then walked outside and she called the police.

> While following up with Baker at the hospital, he stated that he was lying on the couch when Bradley came into the house yelling at his sister Cassandra. Baker stated in an attempt to defend his sister he tried to calm Bradley down. Baker stated that Bradley then jumped on him and began to stab him.

According to Bradley, David and Cassandra subsequently gave "different, inconsistent accounts of what occurred;" yet, counsel "never challenged, or made any attempt to present or expose these critical facts."  In support, he cites one primary example: that the "only time David and his sister Cassandra mentioned Petitioner ran out of the bedroom and stabbed David while he was still on the couch is during the trial phase."  As Bradley sees it, had the jury been made aware of this fact, their credibility would have been cast into doubt.

However, Bradley, not counsel, cross-examined the victim at trial.  Bradley, not counsel, therefore, was in the best position to expose any alleged inconsistencies that would have cast doubt on David's credibility during cross-examination.[2] Notwithstanding, the record reflects that with the guidance of counsel,[3] Bradley was able to elicit testimony from the victim that he told medical personnel that he had a "history of fighting and had "jumped on" and "choked" Bradley. That said, the record reflects that Bradley, David and Cassandra all gave varying accounts of what occurred that night.  But a neutral reading of the record does not reveal any significant discrepancies between David and Cassandra's statements to police and their testimonies at trial that counsel failed to explore.

---

[2] Notably, though the record reflects that Bradley requested that he be allowed to question the lay witnesses, in state post-conviction proceedings, Bradley asserted that counsel "did not even cross examine David Baker at all, leaving petitioner to defend for himself." ECF No. 8-8, p. 25.

[3] When Bradley attempted to introduce the victim's medical report into the record, the trial judge replied, "[Counsel], will you help me out here?"  After a brief pause, Bradley resumed cross-examination and properly questioned David about his comments to medical personnel in the report.

All agreed that Cassandra and David were on the living room couches when Bradley arrived home; and, consistent with David's testimony at trial, Cassandra told police that Bradley was intoxicated, yelling, and had attacked David. By Bradley's own admissions at trial, he was in the bedroom immediately before the attack telling Cassandra that she did not "make [any] motherf----- sense," and that her concerns about him not coming home sooner were "nonsense" and "dumb s---." At that point, Cassandra testified that she "shut down" and got quiet because Bradley made her feel "intimidated." All three agreed that David then spoke up and told Bradley not to talk to his sister that way, prompting Bradley to say that he would "say anything [he] want[ed] in this mother-—." David testified that he spoke up because he had never seen Bradley act that way in the seven years that he had known him—he was "outraged," "wild," and acting like a "loose cannon." David and Cassandra both testified that Bradley then charged from the bedroom. Cassandra specifically recalled hearing a loud noise, while David recalled that Bradley kept one hand behind his back. It is unclear from the questioning and testimonies at trial whether David was still lying, sitting, or had just stood up from the couch when Bradley charged from the bedroom. All agreed, however, that the bedroom and living room were in close proximity; that the situation escalated to a physical altercation quickly; that Bradley stabbed David multiple times; and, they both landed on top of Cassandra.

Counsel did not let the prosecution's case go unchallenged, however. In addition to lodging a successful objection to the admission of the victim's 911 recording, counsel highlighted the portions of Cassandra's testimony that were favorable to the defense.

Counsel noted that Cassandra testified that she did not see the stabbing herself, and her acknowledgment on cross examination that she could not tell if Bradley was intoxicated when he came home because he was "acting normal."  Counsel also highlighted David's acknowledgement that he choked Bradley when Bradley stabbed him, and Cassandra's testimony that she locked the front door to prevent her brother from chasing Bradley after he left.  She also suggested in closing argument that the blood on Bradley's shirt was evidence indicating that David was the aggressor, i.e., that David landed on top of Bradley after attacking him, prompting Bradley to stab him in self-defense and the resulting blood loss to drip downward onto Bradley.

But as noted on direct appeal, the jury could have reasonably concluded that the inconsistencies in Bradley's version of events undermined his credibility. That is, Bradley "first said he stabbed David only after being choked; he later said he stabbed David after they landed on the couch but before he was choked; and, he finally said he stabbed David before they even landed on the couch." *Bradley*, 223 So. 3d at 797.   By comparison, David testified that Bradley was "hiding one of his hands behind his back before the altercation." *Id.*  Both he and Cassandra also testified that Bradley "charged and attacked David first."  *Id.*  Thus, even if counsel was deficient as Bradley argues, the jury could have reasonably concluded that Bradley "initiated the fight, and that he had armed himself before the fight began."  *Id.* Conflicts in evidence are for the jury to resolve, and we must "respect the ability of the fact-finder to evaluate the credibility of the witnesses." *Jackson v. Mississippi Dep't of Corr.*, 359 F. App'x 499, 502 (5th Cir. 2010) (quoting *Knox v. Butler*, 884 F.2d 849, 851 (5th Cir. 1989), *as amended on denial*

*of reh'g* (Nov. 21, 1989)).  The jury's credibility determination, inferences, and reasonable construction of the evidence are entitled to great deference and cannot be circumvented under the guise of an ineffective assistance of counsel claim.  That the Mississippi Supreme Court found ground one to be without merit on post-conviction review was not an unreasonable application or contrary to *Strickland*.

### Ground Two

In ground two, Bradley claims that counsel was ineffective for failing to object to the trial court's "refusal of relevant evidence supporting [his] self-defense theory."  In support, Bradley attaches the hospital report in which the victim reported to medical personnel that he "jumped on" and "choked" Bradley."  The trial court ruled that the report was inadmissible, but Bradley could cross-examine the victim about his comments therein.  In his petition, Bradley asserts generally that counsel was constitutionally deficient in failing to object.  He has since added in a late-filed traverse, that the victim's comments were a "confession" and faults counsel for making "no attempts to contact or subpoena" medical personnel.

Even if counsel had lodged a meritorious and successful objection, or subpoenaed medical personnel, Bradley has not shown that the proceedings would have yielded a different result. *See Buxton v. Lynaugh*, 879 F.2d 140, 142 (5th Cir. 1989) ("*Strickland* allows the habeas court to look at either prong first; if either one is found dispositive, it is not necessary to address the other.").  At Bradley's direction, David read the following from the report on cross-examination:

A: The patient is moved into his sister's house recently. He states that her boyfriend has been physically and verbally abusive towards her in the past he believes. He states that he witnessed the boyfriend arguing and fighting with her and he "jumped on him and choked him." He states the man turned around and stabbed him several times.

At that point, the prosecution objected on hearsay grounds. The trial court overruled the objection and David continued to read the following from the report: "He has had a history of fighting in that past. He states he's never been arrested for violent behavior." When pressed about the comments, David could not recall making them and maintained that Bradley was the aggressor.

Even if counsel should have advocated for the admission of the report as Bradley argues, he cannot show that he was prejudiced by her failure to do so. Bradley got the comments into the record and before the jury, albeit not in the manner he desired. Moreover, given that the report also indicated that David had asserted that Bradley had been "physically and verbally abusive towards [his sister] in the past," counsel could have reasonably determined that the report was "double edged" and harmful to the defense. A tactical decision not to present potential evidence because it is "double-edged" in nature is objectively reasonable. *Runnels v. Davis*, 664 F. App'x 371, 377 (5th Cir. 2016) (citing *Kitchens v. Johnson*, 190 F.3d 698, 703 (5th Cir. 1999) (find that "double-edged" evidence is "even less susceptible to judicial second-guessing" because it "essentially comes down to a matter of degrees"). According the requisite "double deference" to the reasonable decisions of trial counsel and to the state court's reasonable factual determinations from this record, the undersigned submits that the rejection of this

claim was not contrary to or an unreasonable application of *Strickland*, nor an unreasonable determination of the facts from the record presented.

## Ground Four

As his fourth and final ineffective assistance of counsel claim, Bradley asserts that counsel was ineffective for failing to conduct an adequate pretrial investigation, specifically, for failing to obtain a copy of his 911 recording prior to trial.[4]  The record reflects that the prosecution produced a copy of the only 911 recording of record on the morning of trial—the victim's 911 call.  Neither Bradley nor counsel advocated for its admission upon hearing it, however.  Counsel specifically objected that the production was untimely, and the proper foundation had not been laid.  The trial court agreed.  Still, Bradley maintains that a copy of his 911 recording would have corroborated what he told the dispatcher, i.e., that he stabbed the victim in self-defense. In pre-trial proceedings, Bradley asserted that he said the following in his 911 call:

---

[4] In a late filed traverse, Petitioner also claims that counsel was ineffective because she failed to investigate the victim's criminal history before trial.  Though this precise argument does not appear to have been raised in state court proceedings, to the extent it is construed as merely supplementing Bradley's failure-to-investigate claim, the record reflects that counsel filed a motion requesting such information prior to trial. *See, e.g., Morris v. Dretke*, 413 F.3d 484, 491 (5th Cir. 2005).  In response, the prosecution advised that the NCIC search results for David Baker were inaccurate and noted that there was insufficient time to conduct a fingerprint analysis prior to trial. Even if counsel's failure to obtain David's criminal history sooner fell below an objective standard of reasonableness, a claim of ineffective assistance of counsel does not succeed on deficiency of counsel alone. Petitioner must also prove that he was prejudiced, and that but for counsel's error, the proceedings would have been different. In making this assessment, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently," but rather "whether it is reasonably likely the result would have been different." *Vasquez*, 505 F. App'x at 325 (quoting *Harrington*, 562 U.S. at 111–12).  Here, Bradley not only had the opportunity to question David about his criminal history on cross-examination, but the jury heard David testify that he had a history of fighting.

> [I] [t]old them, look, my name is Stanley Bradley. I'm standing outside in my yard. I've done gone too far. I said, Man, I done stuck my brother-in-law. He's bleeding. Y'all need to come get him because if he come outside with that aggression, I say he's going to meet aggression.

Had counsel sought and preserved a copy of his 911 call, Bradley contends that the jury may have concluded that he was in fear of great bodily harm when he stabbed the victim.

It is well-settled that "an attorney must engage in a reasonable amount of pre-trial investigation and, at a minimum, interview potential witnesses and make an independent investigation of the facts and circumstances in the case." *Allen v. Vannoy*, 659 F. App'x 792 (5th Cir. 2016) (quoting *Harrison v. Quarterman*, 496 F.3d 419, 425 (5th Cir. 2007)). "Informed evaluation of potential defenses to criminal charges and meaningful discussion with one's client of the realities of his case are cornerstones of effective assistance of counsel." *Washington v. Watkins*, 655 F.2d 1346, 1355 (5th Cir. 1981) (quoting *Gaines v. Hopper*, 575 F.2d 1147, 1149–50 (5th Cir. 1978)). However, "the duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up," but it does require counsel to "have good reason to think further investigation would be a waste." *Hughes v. Vannoy*, 7 F.4th 380, 388 (5th Cir. 2021). Courts consider "whether counsel has reason to believe that pursuing certain investigations would be fruitless or even harmful; resource constraints; and whether the information that might be discovered would be of only collateral significance." *Hoffman v. Cain*, 752 F.3d 430, 440 (5th Cir. 2014) (internal quotation marks, citations, and footnotes omitted). To succeed on a failure-to-investigate claim, a petitioner must allege "with specificity what the investigation would have revealed and how it would have

altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).

Applying these principles here, Bradley cannot show that counsel's failure to obtain his 911 recording "amounted to incompetence under prevailing professional norms," *Harrington*, 562 U.S. at 101, or that but for her alleged failure, the result would have been different. Bradley has never asserted that he said anything different on his 911 call than what he told police at the scene, i.e, "that he stabbed his girlfriend's brother in self-defense." The record reflects that counsel referenced Bradley's 911 claim in closing argument, as well as the fact that he remained at the scene. However, she placed greater emphasis on David's comments to medical personnel; Bradley's and Cassandra's assertion that David was on top; and, the reasonableness of Bradley's actions under the circumstances. In rebuttal, the prosecution reiterated Cassandra's testimony that she felt intimidated by Bradley's demeanor during their argument; the fact that she corroborated David's assertion that Bradley charged in the room; David's testimony that Bradley was aggressive, threatening, and angry; David's multiple stab wounds; and, Bradley's demeanor during trial.[5] Ultimately, the jury's determination came down to a credibility choice—whether to believe Bradley's self-defense claim, or David's claim that Bradley was the aggressor. Even assuming *arguendo* that counsel was constitutionally deficient in failing to investigate and present evidence of Bradley's 911 call, "the jury could have reasonably decided that Bradley's and David's behavior after the altercation was

---

[5] In pre-trial proceedings, Bradley was admonished to calm down. Defense counsel also requested that bailiffs be present in the courtroom for trial.

outweighed by the evidence that Bradley attacked David first." *Bradley*, 223 So. 3d at 798.

In sum, Bradley "cannot now complain because he received exactly what he requested—assistance of counsel while conducting his own defense." *Metcalf*, 629 So. 2d at 565.  The record reflects that Bradley received effective hybrid representation at trial, and there is no reasonable probability that the result would have been more favorable if only counsel had performed as Bradley argues.  None of his arguments, including those not expressly addressed herein, establish that the Mississippi's Supreme Court's rejection of them was contrary to or an unreasonable application of *Strickland*.  Accordingly, it is recommended that the federal habeas relief be denied.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the *Local Uniform Civil Rules of the United States District Courts for the Southern District of Mississippi*, any party may serve and file written objections within 14 days after being served with a copy of this Report and Recommendation.  Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, except upon grounds of plain error.  28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended,

effective December 1, 2009); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

Respectfully submitted on December 9, 2021.

s/ LaKeysha Greer Isaac
UNITED STATES MAGISTRATE JUDGE